UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ROSA S. MINDIETA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 5:08-CV-102-BG |
| | ) ECF |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Rosa S. Mindieta filed this action seeking judicial review of a decision of the Defendant denying her applications for Disability Insurance Benefits and Supplemental Security Income, and the United States District Judge transferred the case to the United States Magistrate Judge. Mindieta did not consent to the jurisdiction of the United States Magistrate Judge. Pursuant to the order of transfer, the undersigned files this Report and Recommendation and recommends that the District Court reverse the Commissioner's decision and remand the case for further proceedings.

**I.    Statement of the Case**

Mindieta slipped in a bathtub and struck her back on the tub while working as a housekeeper at a motel in 1995. (Tr. 123, 436, 457.) She underwent surgery -- a lumbar fusion -- in 1996 for the injuries she sustained from the slip and fall and subsequently worked as a survey worker, a janitor, and a bus person at a cafeteria. (Tr. 62, 457-58.) Mindieta quit working at the cafeteria in June 2005 and testified that she was unable to work because of back pain and migraine headaches. (Tr. 311, 449.)

The Administrative Law Judge (ALJ) acknowledged that Mindieta suffered from migraine headaches and degenerative disc disease and that she had been diagnosed with failed back syndrome. (Tr. 15.) He determined, however, that despite her severe impairments, Mindieta was capable of performing limited sedentary work, could perform the jobs of lens inserter, final assembler, and printed circuit board assembler, and was therefore not disabled. (Tr. 22-23.) After the Appeals Council denied Mindieta's request for review, (Tr. 11-13), the ALJ's decision became the Commissioner's final decision for purposes of judicial review, *see Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). The court must now review the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. 42 U.S.C. § 405(g); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

**II.   Discussion**

Mindieta's arguments concern the ALJ's evaluation of her complaints of pain. She contends the ALJ did not properly consider the pain she suffers from her failed back syndrome and migraine headaches. She claims her medical records demonstrate that she suffers from medically diagnosed impairments which cause her significant pain and points out that none of her medical providers questioned her allegations of pain and that the record contains treatment records from Texas Tech University Health Sciences Center's International Pain Institute. Pointing to such evidence, she complains that the ALJ failed to incorporate limitations from her pain into the Residual Functional Capacity (RFC) determination and that he did not properly assess her subjective allegations of pain.

A two-step process is used to analyze a claimant's complaints of pain. It must first be determined whether the medical evidence shows that the claimant suffers from a medically

2

determinable impairment that could reasonably be expected to produce the pain the claimant alleges. 20 C.F.R. § 416.929(b) (2007). In this case the ALJ acknowledged that Mindieta suffered from impairments that "could be reasonably expected to produce some of the symptoms she has alleged . . . ." (Tr. 20.)

The ALJ was then required to consider the persistence and intensity of Mindieta's pain in order to determine how pain limited her ability to work. *See* 20 C.F.R. § 416.929(c). Thus, the ALJ was required to consider Mindieta's statements regarding the intensity, persistence, and limiting effects of her pain in relation to other evidence. *See* 20 C.F.R. § 416.929(c)(4). The Commissioner's regulations and rulings acknowledge that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence" and "symptoms, such as pain, are subjective and difficult to quantify." 20 C.F.R. § 416.929(c)(3); *see also* S.S.R. 96-7p.

In this case, the ALJ concluded that Mindieta had "greatly exaggerated both the nature and severity of her subjective complaints in an effort to obtain disability benefits." (Tr. 21.) In reaching this conclusion the ALJ considered only medical evidence related to Mindieta's back problems. In regard to her back condition, the evidence includes a number of entries from physicians diagnosing failed back surgery syndrome, chronic mechanical lower back disorder, and lumbar disk disease with lumbar radicular pain. (*See, e.g.,* Tr. 122, 235, 434.) CT scanning showed multi-level disk disease with a posterior osteophyte at L5/S1 and degenerative sacroiliac joint changes. (Tr. 310, 312.) Although the ALJ considered this evidence, he did not consider any evidence related to Mindieta's migraine headaches. (*See* Tr. 20-21.) According to the evidence Mindieta suffers from related vomiting and pain that is at times so severe that physicians have ordered intravenous medication to alleviate her symptoms. (Tr. 151, 176, 326-28.)

3

In addition to failing to consider the pain associated with Mindieta's migraine headaches, the ALJ made a number of errors in his evaluation of Mindieta's back pain. First, he erred in stating that there was no evidence that Mindieta was taking any medications at the time of his decision and erred further in stating that pain medications had not been necessary since October 2006. (Tr. 21.) The ALJ was incorrect. On November 21, 2006, Jack McCarty, D.O., noted that Mindieta was taking Lortab for her pain. (Tr. 434-35.) Second, the ALJ erred in stating that there was no evidence that Mindieta had a "'cracked disc' on her tailbone." (Tr. 21.) Winston Whitt, M.D., noted that Mindieta struck her "tailbone" when she fell while working in 1995 and that she suffered from disc disease in the coccyx. (Tr. 394.) The ALJ stated that there was no evidence that Mindieta had a "surgical condition," but there is evidence that physicians believed surgery might have been an option. In May 2006 Robert Coolbaugh, D.C., examined Mindieta and reviewed her medical history and noted that "surgical intervention may be necessary to relieve compression." (Tr. 290.) Thereafter, Robert H. LeGrand, Jr., M.D., noted that Mindieta was "incapacitated" at that time and that he would await studies so that he "could make some decisions." (Tr. 312.) The last medical record, which is dated less than one month prior to the hearing before the ALJ, was from Dr. McCarty. (Tr. 434-40; *compare* Tr. 443.) Dr. McCarty summarized Mindieta's medical history for an insurance company. (Tr. 434-40.) He noted that Mindieta would have "life long pain" and that there was a question about possible hardware removal that could change her symptoms. (Tr. 435.) In response to a question regarding whether any surgical procedures were indicated, Dr. McCarty noted that there was a question whether the hardware in Mindieta's back was contributing to her symptoms, that he did not have Dr. LeGrand's notes but that "she may require hardware removal." (Tr. 436.)

4

Finally, the ALJ stated, "the record suggests a pattern of drug-seeking behavior, with multiple trips to the emergency room for narcotics and muscle relaxants within short time spans." (Tr. 21.) The ALJ specifically noted that Mindieta had obtained two prescriptions for hydrocodone and a muscle relaxant in a six-day period in June 2005.[1] (Tr. 16.) It is not entirely clear what the ALJ intended by using the term "drug-seeking behavior"; however, other courts have used the term in Social Security in discussions regarding a claimant's drug addiction and/or manipulation to obtain prescription drugs. *See, e.g.*, *Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007); *Slater v. Barnhart*, 372 F.3d 956, 957 (8th Cir. 2004). Other courts have noted opinions of physicians who, themselves, noted "drug-seeking behavior." *See, e.g., Harvey v. Barnhart*, 368 F.3d 1013, 1015 (8th Cir. 2004).

There is no evidence of drug-seeking behavior in this case. The medical records show that Mindieta sought medical attention for back pain at an emergency room on June 2, 2005. (Tr. 113.) At that time a physician prescribed Norco 7.5 mg which, according to the Physician's Desk Reference (PDR), consists of hydrocodone and acetaminophen. *Id*.; PHYSICIAN'S DESK REFERENCE at 3425-26 (56th ed. 2002). According to the PDR, the usual adult dosage of the prescription is one tablet every four to six hours with a daily dose not to exceed six tablets. PHYSICIAN'S DESK REFERENCE at 3426. The physician prescribed twenty Norco tablets and a muscle relaxant. (Tr. 114.) The following day Mindieta sought treatment at the same emergency room for a headache, and treatment was an injection of Toradol, an anti-inflammatory medication. (Tr. 111); PHYSICIAN'S DESK REFERENCE at 3019-20. Nothing in the records from this visit suggest that

---

[1] Although the ALJ states that Mindieta obtained the prescriptions in "early June 2006" (Tr. 15-16), the ALJ's reference to 2006 is clearly a typographical error. After discussing the medical care Mindieta obtained during this period of time, he notes that she subsequently "resumed her pattern of seeking emergency room treatment for her back complaints in October 2005." (Tr. 16). In addition, Mindieta did not seek emergency room care in June 2006; at that time Dr. LeGrand and Selma P. Wilson, M.D., were providing Mindieta's medical care and treatment. (*See* Tr. 311-12, 340.)

5

Mindieta asked for or received prescription medications other than the Toradol injection. Two days later on June 5, 2005, Mindieta complained of back pain and was prescribed twenty tablets of Lortab 5/500. (Tr. 179, 182.) According to the PDR, Lortab 5/500 consists of hydrocodone and acetaminophen and dosage is one to two tablets every four to six hours and up to eight per day as needed for pain. PHYSICIAN'S DESK REFERENCE at 3319-20.

The total amount of hydrocodone Mindieta received in a three-day period was, according to the PDR, a dosage equivalent to that a patient might take over five days. PHYSICIAN'S DESK REFERENCE at 3320 & 3426. On June 16, 2005, ten days after her last treatment at the emergency room on June 5, 2005, Mindieta was treated for headache and vomiting, but was not given prescription medications. (Tr. 171-73.) Although the records include other examination notes generated as a result of medical treatment Mindieta obtained in an emergency room on three other occasions in 2006, there is no indication of "drug-seeking behavior." (*See* Tr. 158, 146, 164.) And there is no indication in any of Mindieta's treatment or examination records that physicians believed Mindieta was engaging in drug-seeking behavior. *Compare Harvey*, 368 F.3d at 1015 (noting that a physician referred to "drug-seeking" behavior in his examination notes and that other physicians had repeatedly noted that the claimant's complaints of pain were out of proportion with any identifiable medical causes).

Although the ALJ may consider a claimant's misuse of medications in his credibility determination, *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003), there is no evidence of misuse of prescription medications, drug addiction, secondary gain, or any other such evidence in this case. The ALJ's finding that the record suggested a pattern of "drug-seeking behavior" is wrong.

The evidence shows that Mindieta suffers from chronic and severe back pain and migraines and that she has sought relief from her pain. She should not be penalized for doing so.

A claimant's subjective allegations of pain are an important factor in the disability evaluation: "In determining whether substantial evidence of disability exists,[the] court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005). Courts have acknowledged that pain itself may be disabling. *See Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989) (citing *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. Unit A 1981)). And Congress has acknowledged the same. *See* 42 U.S.C. § 423(d)(5)(a) (directing that medical and other evidence must be considered in order to determine whether pain is disabling). The District Court should order remand in this case so that Mindieta's pain may be considered in accordance with the regulations and applicable case law.

## III. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court reverse the Commissioner's final decision and remand this case to the Commissioner for further proceedings.

## IV. Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted

by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: February 24, 2009.

_____
NANCY M. KOENIG
United States Magistrate Judge